IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KAREN R. RANSOM,

        Plaintiff,                    No. CIV S-08-2695 EFB

     vs.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.             ORDER
_____/

       Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. For the reasons discussed below, the matter is remanded for further findings addressing the deficiencies discussed below.

I. BACKGROUND

       Plaintiff, born August 1, 1950, applied for DIB on March 31, 2006. Administrative Record ("AR") 12, 17. Plaintiff's application alleged that she had been disabled since September 21, 2005. *Id.* at 12. Plaintiff's application was denied on June 1, 2006, and again upon reconsideration on December 22, 2006. *Id.* On November 13, 2007, a hearing was held before administrative law judge ("ALJ") Daniel G. Heeley. *Id.* Plaintiff, who was represented by a non-attorney representative testified at the hearing, along with vocational expert George A.

1

Meyers. *Id.*

The ALJ issued a decision on February 25, 2008, finding that plaintiff was not disabled.[1] *Id.* at 12-18. The ALJ made the following specific findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2007.
>
> 2. The claimant has not engaged in substantial gainful activity since September 21, 2005, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairment: Meniere's disease (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

***

////

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.* Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits under both programs. *See* 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 and 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:
> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater,* 81 F.3d 821, 828, n.5 (9th Cir. 1995).
  The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

    5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: can occasionally climb stairs/ ladders and cannot work at heights or around moving machinery.

***

    6.  The claimant is able to perform any past relevant work (20 CFR 404.1565).

***

    7.  The claimant was born on August 1, 1950 and was 55 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

    8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

    9.  The claimant has acquired work skills from past relevant work (20 CFR 404.1568).

***

    10.  Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1560(c), 404.1566, 404.1568(d)).

***

    11.  The claimant has not been under a disability, as defined in the Social Security Act, from September 21, 2005 through the date of this decision (20 CFR 404.1520(g)).

AR 14-18.

Plaintiff requested that the Appeals Council review the ALJ's decision. However, on September 11, 2008, the Appeals Council denied review, leaving the ALJ's decision as the "final decision of the Commissioner of Social Security." *Id.* at 1-4.

II. <u>MEDICAL EVIDENCE</u>

On September 21, 2005, plaintiff was admitted to Saint Joseph's Medical Center with severe vertigo and acute nausea. *Id.* at 166. She reported that she had sudden dizziness that

3

morning. *Id.* at 158, 165. Plaintiff was described as an "acutely uncomfortable middle-aged female." *Id.* at 167. Plaintiff was treated for her symptoms and was discharged the following day even though she continued to have mild persistent vertigo. *Id.* She was told to avoid driving. *Id.* at 159.

On September 29, 2005, plaintiff received followup care. *Id.* at 180. She was assessed with dizziness and giddiness and prescribed Compazine and Antivert. *Id.* On October 6, 2005, medical records indicated that plaintiff had had episodes of dizziness for three weeks, possibly due to labyrinthitis. *Id.* at 162. The doctor wrote that plaintiff's condition was "prolonged and symptoms are getting worse." *Id.* The doctor ordered an MRI because plaintiff was experiencing headache and dizziness, with a report of an episode of loss of consciousness. *Id.* at 263. The MRI results revealed minimal chronic ischemic changes. *Id.*

On October 11, 2005, plaintiff received a prescription for Elavil and Imitrex. *Id.* at 260. On October 13, 2005, plaintiff reported that her headaches were better with medications but that she continued to have dizziness. *Id.* at 259. On October 24, 2005, medical records reflected that plaintiff had suffered from vertigo since September 21, 2005, especially when turning to the right. *Id.* She reported she walked better when focused on a distant point, was using her mother's cane to walk, and noted a ringing in her ears. *Id.* at 257. The doctor's impression was "benign paroxysmal positional vertigo . . . likely in the resolution phase . . . . I have discussed the possibility of an incomplete resolution." *Id.*

A November 17, 2005 record reflected that plaintiff's vertigo was slowly improving, but that she still had episodes of vertigo without antecedent events. *Id.* at 255. The doctor noted:

> She sees a shadow overtop of images at times but no frank double-vision. She has no headache. She works as a computer class instructor and watching a screen for more than half-an-hour causes her to be very dizzy. Occasionally, she is dizzy looking up or turning to the right. However, she has tinnitus on her left. Audio today is normal.

*Id.*

Plaintiff reported having constant "ringing and wind" noise in her head. *Id.* at 254. She was assessed with tinnitus (a constant noise in her head) and dizziness (specifically, vertigo). *Id.* Her hearing was found to be within normal limits. *Id.*

December 1, 2005, medical records reflected that plaintiff was suffering from dizziness and neck pain. *Id* at 248. She reported that at her best, her pain was a two and at its worst, it was a nine. *Id.* She indicated that her dizziness symptoms felt the same all day, her neck was worse in the evening, but that the severity of her symptoms depended on what she was doing. *Id.* She reported that her problems started on September 21, 2005, when she became dizzy, vomited, and could not walk unassisted. *Id.* at 249. She stated that she had experienced problems before with some dizziness and neck pain. *Id.* Her report reflected that she recently had problems with nausea/vomiting, headaches/dizziness/vertigo/visual disturbances, difficulty keeping her balance while standing/walking, fatigue, and weakness. *Id.* A physical therapy evaluation on the same day reflected that plaintiff had an unsteady gait, a decrease in focus of vision, and had to increase her concentration to minimize her symptoms. *Id.* at 246. Her rehabilitation potential was marked as "fair" because it was "unclear as to source of [the symptoms at] this time." *Id.* at 247. A December 5, 2005 medical record reflected that plaintiff's vertigo that was slowly improving, but that she still had episodes of vertigo without antecedent events. *Id.* at 243. The impression was that her vertigo was plateauing but she still had good days and bad days. *Id.* She was instructed to do no bending for two days, sleep in a recliner, and take Valium. *Id.* A December 9, 2005 medical record reflected that plaintiff was receiving Epley for her right ear and was taking 2 mg Valium BID. *Id.* at 242. She was "feeling better today but was initially worse." *Id.* She reported sitting was okay for her, but the doctor recommended that she do no bending or quick turns for a week. *Id.* December 12, 2005 medical records reflected that plaintiff was taking Prilosec, Levothroid, Atenolol, Locor, Amitriptyline, Imitrex, Diazepam and Promethazine. *Id.* at 239.

////

January 10, 2006 records reflected that plaintiff had a history of dizziness for the last four months that had not improved. *Id.* at 236. February 13, 2006 records reflected that Ms. Ransom had recently had several days of extreme nausea and vertigo. *Id.* at 232. The Epley for the right ear had not helped significantly. *Id.* A neurologist had confirmed the labyrinthitis diagnosis. *Id.* Plaintiff had some "fuzziness" and had to be careful when turning, and did well in a controlled familiar environment such as her home. *Id.* The doctor noted, "she is interested in pursuing disability. She has not been able to return to work thus far." *Id.* The impression was: "Vertigo/labyrinthitis - plateauing; she still has good and bad days despite 1 mg Valium TID. She has come to terms with the idea that some of this may remain persistent. She is working on coping skills. I have encouraged her to go to her classroom and arrange things so it can be a comfortable, controlled environment also." *Id.* February 23, 2006, records reflected that Ms. Ransom's current medications were Promethazine, Atenolol, and Imitrex. *Id.* at 231.

August 29, 2006 records reflected that plaintiff received followup treatment for her dizziness that had lasted a full year. *Id.* at 228. She was unable to work and unable to drive, with a feeling of the room spinning with each head movement. *Id.* She was assessed with chronic dizziness. *Id.*

A January 17, 2007 medical record reflected that plaintiff's dizziness had been ongoing for two years. *Id.* at 221. She continued to feel dizzy with movement, had had an episode of falling in which she had injured her right shoulder, and was unable to work and unable to drive. *Id.* "She complained of a feeling of room spinning with head movement." *Id.* She was assessed with chronic dizziness. *Id.*

A February 13, 2007 medical record stated that plaintiff possibly had "viral labyrinthitis or neuronitis with secondary atypical EL-II" and that she had a dizziness attack on Sunday and tinnitus that lasted for days. *Id.* at 270. The doctor wrote that plaintiff "[c]ontinues to be disabled. Cannot work." *Id.*

////

An April 5, 2007 medical record noted that plaintiff was having trouble reading, but made herself read every day using colored paper. *Id.* at 268. She had had several recent falls, and was not sleeping well, as she would wake up with the sensation that she is in the bed tipped over on the floor. *Id.* Her tinnitus made it hard for her to focus or have conversations with others. *Id.* She reported using her cane fifty percent of the time, and still kept a fingertip to the walls when walking in the house. *Id.* at 268. She scored fifty-eight out of a hundred on the Dizziness Handicap Inventory. *Id.*

Plaintiff was treated on October 29, 2007 for a shoulder injury after she "had a severe fall at home due to dizziness." *Id.* at 271. She was told to use an arm sling and was given medication for inflammation and pain. *Id.*

III. ISSUES PRESENTED

Plaintiff contends that the Commissioner erred in sustaining the ALJ's determination that she is not disabled by (1) rejecting the opinions of her treating physicians without a legitimate basis for doing so; (2) failing to credit her testimony and third party statements as to the nature and extent of her functional limitations; and (3) failing to properly assess plaintiff's residual function capacity and pose a legally adequate hypothetical to the Vocational Expert, and as a result, finding plaintiff capable of performing her past work or in the alternative capable of performing a significant number of jobs based on the VE's testimony. Dckt. No. 20 at 4.

IV. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is

more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

V. ANALYSIS

Plaintiff contends that the ALJ erred in rejecting the opinions of plaintiff's treating physicians. One of plaintiff's treating physicians, Dr. Cato, opined that plaintiff could sit and stand for less than an hour during an eight-hour day and would need to alternate sitting and standing throughout the day; that she could not use her hands to write; that she could not lift weight, climb, balance, stoop, kneel, crouch, crawl, or reach above shoulder level; and that she could not engage in activities involving unprotected heights, being around moving machinery, marked changes in temperature and humidity, driving automotive equipment, or exposure to dust, fumes and gases. AR at 264-65. Dr. Cato wrote that "the aforementioned levels of disability apply to patient's functional capabilities during her sick days. These are unpredictable. Some higher level of functioning may be possible on well days . . . on sick days patient is 100% disabled." *Id.* at 265.

Another treating physician, Dr. Jasti, shared Dr. Cato's opinions regarding plaintiff's specific abilities. *Id.* at 266-67. Dr. Jasti also wrote "on a bad day, [plaintiff] has to be in bed lying down. Cannot sit/stand," and "these questions are answered based on her bad days. She has more bad days than good days. On bad days she cannot do any activity . . . ." *Id.*

////

8

The ALJ gave little weight to these doctors' opinions, writing that they were not supported by the medical records. The ALJ found that Dr. Jasti's opinion was not consistent with substantial evidence in the record, and that "these drastic differences may be the possible result of sympathy for the patient or an effort to avoid unnecessary tension with the patient after a demand for supporting material by the patient." *Id.* at 16.

The ALJ gave great weight to the opinion of the Social Security Administration medical consultant, who opined that claimant had no exertional limitations, could frequently climb ramps/ stairs, balance, stoop, kneel, crouch and crawl, could occasionally climb ladder/ rope/ scaffolds, and had no manipulative, visual or communicative limitations, but should avoid even moderate exposure to hazards such as machinery and heights. *Id.* at 16. The consultant had not treated or examined plaintiff and had not reviewed the plaintiff's physicians' opinions before preparing the report.[2] *See id.* at 203. The ALJ stated that he gave great weight to the consultant's findings because the consultant's form was complete and his specialty was internal medicine. *Id.* The ALJ found that plaintiff had the "residual functional capacity to perform a full range of work at all exertional levels but with the following exertional limitations: can occasionally climb stairs/ladders and cannot work at heights or around moving machinery." *Id.* at 14.

Plaintiff argues that the ALJ rejected the opinions of plaintiff's treating physicians without a legitimate basis for doing so. Dckt No. 20 at 18-22. She argues that the medical consultant did not treat or examine plaintiff, rendered his opinion in 2006 without taking into account her treating physicians' opinions or her later medical records, and, as an internal medicine specialist, had no particular insight into plaintiff's condition. *Id.* at 17. Defendant argues that the ALJ provided specific and legitimate reasons for giving little weight to the treating physician's opinions, namely, that the treating physicians' opinions were not supported

---

[2] The consultant answered "no" to the question "Is a treating or examining source statement(s) regarding the claimant's physical capabilities in the file?" AR 203.

by the medical records. Dckt. No. 21 at 5-6.

A Commissioner may reject the contradicted opinion of a treating physician only for "specific and legitimate" reasons supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states his interpretation of the evidence, and makes a supported finding. *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. *Lester*, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. *Id.* at 831.

Here, the ALJ did not provide specific, legitimate reasons for discounting the medical opinions of plaintiff's treating physicians' opinions. His only explanation was that their opinions were not supported by the medical records and that Dr. Jasti's opinion was inconsistent with "other substantial evidence in the record." *Id.* at 16. However, the ALJ's discussion of the medical records was limited to a two-sentence summary of plaintiff's September 21, 2005 hospital treatment and initial diagnosis. *Id.* at 15-16. The ALJ did not address the medical background discussed above, or explain why it did not support plaintiff's physicians' opinions. He also failed to specifically explain what "substantial evidence" in the record was inconsistent with Dr. Jasti's opinion. As explained above, the report of the non-examining, non-treating medical consultant could not alone constitute such "substantial evidence." Thus, the ALJ erred in rejecting the treating physicians' opinions.

Plaintiff also argues that the ALJ failed to credit her testimony and the testimony of a third party, and failed to properly assess her residual functional capacity and pose a legally adequate hypothetical to the vocational expert. As the case must be remanded for further findings because of the ALJ's error in rejecting plaintiff's treating physicians' opinions, the court need not address these additional issues.

## VI. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. Plaintiff's request for remand is granted;

3. The Commissioner's cross-motion for summary judgment is denied;

4. This matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g), for further findings addressing the deficiencies noted above; and

5. The Clerk is directed to enter judgment in favor of plaintiff in accordance with this order.

DATED: March 29, 2010.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE